UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWIN C. MARTIN, JR., et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:05CV01857 AGF |
| | ) |
| JAMES P. HOLLORAN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on (1) Defendants' motion for summary judgment on multiple grounds, (2) Plaintiffs' motion for reconsideration of this Court's Memorandum and Order dated March 27, 2008, and (3) Plaintiffs' motion for modification of the Court's Memorandum and Order dated April 9, 2010. Oral argument was held on the motion for summary judgment on July 19, 2010. For the reasons set forth below, all three motions shall be denied.

## BACKGROUND

At this point, this case involves Plaintiffs' claim for breach of an alleged written fee-splitting agreement ("Associate Counsel Agreement") between Plaintiffs, Edwin C. Martin, Jr., as an individual and a California professional corporation law firm ("Martin" shall refer to the individual Plaintiff), and James P. Holloran, Jr., an individual and professional corporation law firm ("Holloran" shall refer to the individual Defendant).

Plaintiffs seek damages as a result of Defendants' alleged failure to pay Plaintiffs one-third of the legal fees collected by Defendants in asbestos-related personal injury cases filed in the late 1980s to the mid-1990s on behalf of individuals who had gone through "asbestos screenings" designed by Plaintiffs.

On December 3, 2004, Plaintiffs filed an action against Defendants in Missouri state court for an accounting (Case No. 22044-02618), and then voluntarily dismissed that action on September 21, 2005. Plaintiffs filed the present action in this Court on October 11, 2005. By Memorandum and Order dated March 27, 2008 (Doc. #92), this Court held that, among other things, a jury question was presented on whether a written Associate Counsel Agreement, in the form of an exemplar Associate Counsel Agreement that is in the record, was executed between the parties. Defendants' current motion for summary judgment raises five separate arguments, presented below as arguments (a) through (e).

## **DISCUSSION**

**Summary Judgment Standard**

Rule 56(c)(2) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn

from the record. Sokol & Assocs., Inc. v. Techsonic Indus., Inc., 495 F.3d 605, 610 (8th Cir. 2007).

(a) **Whether Plaintiffs' Action is Barred by the Statute of Limitations**

In the current motion, Defendants assert, once again, that Plaintiffs' claims are barred, in their entirety, by the statute of limitations. It is undisputed that by virtue of Missouri's savings statute, Mo. Rev. Stat. § 516.230,[1] the timeliness of Plaintiffs' present action is based upon the December 3, 2004 filing of the state court action. In the March 27, 2008 Memorandum and Order, this Court concluded that most of Plaintiffs' claims, including their claim for breach of an oral fee-splitting agreement, were governed by a five-year statute of limitations and were time-barred because the statute began to run "at the latest" when Plaintiffs received a letter dated January 21, 1999, from Defendants. The Court held that this letter would have put Plaintiffs on notice that Defendants failed to perform in the manner that Plaintiffs believed was called for by the agreement. The Court also held, however, that a jury question was presented with respect to the existence of a written agreement between these parties, and recognized, "If the jury finds that a written 'Associate Counsel Agreement' was executed between Plaintiffs and Defendants, then [a ten-year limitation period, not a five-year period,] would apply to Plaintiffs' breach of contract claim, and this claim would not be time-barred." It was unnecessary

---

[1] § 516.230 permits the filing of a new action within one year after a previous case has been voluntarily dismissed, provided the original action was filed within the relevant statute of limitations period.

for the Court to explicitly determine when the ten-year statute did begin to run – and the Court intended to make no such finding – because Defendants argued then that the five-year limitations period barred all claims, and presented no evidence or arguments pertaining to a ten-year statute.

Defendants now argue that Martin's testimony in his second deposition, taken on September 29, 2009, establishes that the accrual date of the statute of limitations was more than ten years before December 3, 2004. Defendants argue for an accrual date sometime in December 1991, when, as Martin acknowledged in the second deposition, the parties had a disagreement about the fee allocation in light of Defendants' engaging another law firm ("Ness Motley") to assist Defendants. Defendants argue that this disagreement would have put Plaintiffs on notice of a potentially actionable breach-of-contract injury, triggering the statute of limitations.

Under Missouri law, the statute of limitations for a breach of contract claim accrues not when the wrong is done or the technical breach of contract occurs, but when the damage is "capable of ascertainment," that is, when "the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury." Pitman v. City of Columbia, 309 S.W.3d 395, 405 (Mo. Ct. App. 2010); see also Garrett v. Cassity, No. 4:09CV01252 ERW, 2010 WL 2540748, at *4 (E.D. Mo. June 17, 2010). Upon review of Martin's testimony, the Court cannot conclude, as a matter of law, that Holloran's December 1991 request for a new fee allocation, whereby Plaintiffs would get one-fifth, rather than one-third, of fees earned, put Plaintiffs on notice that Defendants did not

4

intend to honor their obligations under the initial fee-splitting agreement. Martin testified that he told Holloran that he did not accept this arrangement, and expected his agreed-upon percentage. He further testified that he thought the matter was concluded.

Other than the appellate court decision in the Harashe case, which is discussed below, Defendants point to no other event before December 3, 1994, that would have put Plaintiffs on such notice, as a matter of law.[2] Accordingly, this aspect of the motion for summary judgment shall be denied.

(b) **Whether Plaintiffs' claim for Fees in the *Harashe* Case is Barred by the Statute of Limitations**

One of the lawsuits subject to the parties' fee-splitting agreement, the Harashe case, resulted in a verdict in December 1991 for the plaintiff therein in the amount of $2.5 million. The verdict was affirmed on appeal, in a published opinion, on February 2, 1993. Defendants argue that the Harashe case presents a unique situation and that Plaintiffs' claim for a portion of the fees earned in that case is time-barred. Defendants argue that the affirmance of the verdict on appeal triggered the statue of limitations, at least with respect to a claim for fees from that case.[3] This argument is flawed. The

---

[2] This may be a case in which the question of when the limitations period accrued should be presented to the jury, subject to the Court's earlier conclusion that it accrued at the latest on January 21, 1999. See, e.g., Pitman, 309 S.W.3d at 405 (holding that because fact issues remained regarding when the statute of limitations accrued, the district court should have submitted the matter to the jury).

[3] To the extent Defendants argue that the statute of limitations as to all claims accrued on this date, the argument is rejected for reasons discussed above.

limitations period would not necessarily have begun to run on the date the damages award was affirmed on appeal, or on the date of the disbursement of the award, but rather on the date Plaintiffs had reason to know that Defendants were not going to give Plaintiffs their alleged rightful share of the fees earned. Indeed, the correspondence between the parties herein, which was detailed in this Court's March 27, 2008 Memorandum and Order, shows a pattern by Defendants of periodically remitting amounts due Plaintiff with respect to multiple cases, rather than remitting Plaintiffs' share on a case-by-case basis.

As such, here, too, Defendants have not established the absence of a genuine issue of fact on the question of whether the accrual date for a claim for fees from the Harashe case was before December 3, 1994. See, e.g., Allen v. Kuehnle, 92 S.W.3d 135, 141 (Mo. Ct. App. 2002) (holding that the district court erred in granting the defendant's motion for summary judgment on a breach of contract claim where genuine issues of material fact remained with regard to the accrual of the statute of limitations). Further, the agreement between the parties here purported to cover hundreds of lawsuits. Defendants have provided no case law to support the proposition that with such an arrangement, an individual limitations period would begin to run as to each lawsuit, separately. Accordingly, this portion of Defendants' motion for summary judgment shall be denied.

(c) **Whether Plaintiffs' Failure to Comply with the California Rules of Professional Conduct Renders the Fee-splitting Agreement Unenforceable**

It is undisputed that Plaintiffs had provided Defendants with a form Asbestos

Retainer Agreement to use with individuals who had tested positive in the asbestos screenings. It is also undisputed that this form of Asbestos Retainer Agreement was in fact signed by many such clients. This Court held in the March 27, 2008 Memorandum and Order that the form agreement satisfied Missouri Supreme Court Rule 4.1-5(e) (Missouri Rule of Professional Conduct 1-5(e)). Defendants now assert that the fee-splitting agreement is nonetheless unenforceable because it did not comply with the California Rules of Professional Conduct.

California Rule of Professional Conduct 2-200(A)(1), while similar to Missouri's rule, differs in that it requires that a client be informed in writing "that a division of fees will be made and the terms of such division," and that the client consent to the arrangement. The form Asbestos Retainer Agreement in question here did not do so. But neither the version of Missouri's Rule 4.1-5(e) that was in effect at the time of the parties' agreement,[4] nor the current version, requires disclosure to the client of the share that each lawyer is to receive.

Unlike some other states, both Missouri and California courts refuse to enforce a fee-splitting agreement that does not comply with the state's relevant rule of professional conduct. See Law Offices of Gary Green, P.C. v. Morrissey, 210 S.W.3d 421, 425 (Mo. Ct. App. 2006) ("[A]n agreement to share attorney fees that does not comply with Rule

---

[4] See Eng v. Cummings, McClorey, Davis & Acho, PLC, No. 09-2426, 2010 WL 2696746, at *4 (8th Cir. July 9, 2010) (applying the version of Rule 4.1-5(e) in effect at the time the fee-splitting agreement was entered into).

7

4-1.5(e) is unenforceable.") (quoting Neilson v. McCloskey, 186 S.W.3d 285, 287 (Mo. Ct. App. 2005); Chambers v. Kay, 56 P.3d 645, 654-58 (Cal. 2002) (same as to California's policy). Defendants contend that because Martin violated the ethics rules that applied to him as a member of the California Bar, an "imperfect" fee-splitting agreement was created, and that enforcement of an "imperfect" fee-splitting agreement would violate Missouri's public policy.

Cases dealing with which state's ethical rules regarding fee-splitting apply when more than one state's rules are relevant take a conflict-of-law approach to the question. See, e.g., Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 188 F. Supp. 2d 115, 118-23 (D. Mass. 2002); Frost v. Lotspeich, 175 P.3d 1185, 188-90 (Or. Ct. App. 2001). "In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law." Stricker v. Union Planters Bank, 436 F.3d 875, 877 (8th Cir. 2006).

Missouri courts rely on the Restatement (Second) of Conflict of Laws, and specifically, in contract cases, Section 188 of the Restatement, which employs the "most significant relationship" test. Adams v. One Park Place Investors, LLC, ___ S.W.3d ___, 2010 WL 2570574, at *2-3 (W.D. Mo. June 8, 2010). Under Section 188, to determine which state has the most significant relationship to the lawsuit, the following factors are to be considered: (a) the place of the contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of

business of the parties.

In considering these five factors, Missouri Courts also apply the choice-of-law principles of Section 6 of the Restatement: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. Id.

Of particular interest here is comment c to Section 188, which states as follows:

[A] state where a contract provides that a given business practice is to be pursued has an obvious interest in the application of its rule designed to regulate or to deter that business practice.

\*   \*   \*

Whether an invalidating rule should be applied will depend, among other things, upon whether the interests of the state in having its rule strike down the contract outweighs in the particular case the value of protecting the justified expectations of the parties and upon whether some other state has a greater interest in the application of its own rule.

The Court finds Defendants' position on this issue unpersuasive. Apart from the fact that Plaintiffs resided in California, all of the factors listed in Section 188 identify Missouri as the state with the "most significant relationship." And there is no reason to believe that Missouri would determine that California's rule of professional conduct should supersede its own. Missouri has determined the parameters of the protections it wishes to afford Missouri clients whose attorneys enter into a fee-splitting agreement. In

9

doing so, Missouri has chosen not to follow the more stringent California requirement of detailing to clients the shares that each attorney is to receive under such an agreement. This Court believes that the Missouri Supreme Court would conclude that here the fact that the form Asbestos Retainer Agreement did not comply with California's ethical rules would not render the fee-splitting agreement unenforceable. All clients in question were Missouri residents. Application of Missouri's ethical rule will not inhibit California from protecting its own citizens by regulating its attorneys' conduct.

Furthermore, invalidating the fee-splitting agreement would serve to undermine the expectations of the contracting attorneys, who, at the time they entered into the agreement, expected to be bound thereby. See Daynard, 188 F. Supp. 2d at 123 (stating, in analyzing the question under the Restatement: "Assuming there is a [fee-splitting] contract, the Court ought to select the law of the state that is most likely to enforce the contract.")

(d) **Whether Defendants are Entitled to Summary Judgment as to the Clients for Whom Plaintiffs Have Not Produced Written Asbestos Retainer Agreements**

As this Court stated in the March 27, 2008 Memorandum and Order, the applicable version of Rule 4-1.5(e) required that for a fee-splitting agreement to be enforceable, (1) either the division of fees had to be in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumed joint responsibility for the representation, (2) the client had to be informed and not object to the joint representation, and (3) the fee total had to be reasonable.

During discovery, Defendants produced signed Asbestos Retainer Agreements, all using the same form of agreement, for 143 relevant asbestos clients. Defendants asserted that they did not have any written retainer agreement for 140 of the asbestos clients. Defendants now argue that they are entitled to summary judgment on Plaintiffs' claims as to these 140 clients for whom Plaintiffs have not put forth a written retainer agreement pursuant to which Plaintiffs and Defendants assumed joint responsibility. Plaintiffs admit that they have not produced and do not possess such a writing as to the 140 individuals listed in Defendants' Statement of Uncontroverted Facts (Doc. #208).

To the extent that Plaintiffs argue that the agreement at issue was an agreement to divide the fee in proportion to the work performed by the parties, the Court rejects this argument. No reasonable jury could find that this case involves an agreement to split fees in proportion to the amount of work performed by each attorney. See Eng v. Cummings, McClorey, Davis and Acho, P.L.C., 2009 WL 1543840, at *5 (W.D. Mo. June 2, 2009), aff'd, 2010 WL 2696746 (8th Cir. July 9, 2010). Nor is the Court persuaded by Plaintiffs' suggestion that no client objected. Absent an agreement to share proportionally, the requirement that the parties have a written agreement with the client is clear. See Eng, 2010 WL 2696746, at *3-4. Therefore, Plaintiffs' argument that the fee-splitting agreement satisfies Rule 4-1.5(e) because none of the individual clients objected to the Plaintiffs' participation as counsel, is without merit. See id. at *4.

The question then remains whether Defendants are entitled to judgment because Plaintiffs are unable to produce a written agreement with the clients with respect to those

11

140 files. Plaintiffs argue that it was Defendants' agreed-upon responsibility to "obtain and maintain" the form Asbestos Retainer Agreements with the clients. Therefore, according to Plaintiffs, it is unfair for Defendants to now argue that Defendants' inability to produce such agreements as to approximately one half of the relevant clients should work to Plaintiffs' disadvantage. The form Associate Counsel Agreement, however, does not contain such a provision. Moreover, it is Plaintiffs who are seeking to recover based on these agreements, and one would expect Plaintiffs, as purported co-counsel, to maintain copies of agreements with clients.

Plaintiffs further argue that the clear inference from the record is that the "missing Asbestos Retainer Agreements at one time existed as to all the St. Louis clients," and that therefore a jury question is presented on the matter. Plaintiffs point to Holloran's deposition testimony that contingent fee agreements were executed by all the St. Louis asbestos clients. Holloran testified, however, that he could not say that all of these agreements followed the form Asbestos Retainer Agreement that appears in the record.

In Missouri, failure of a fee-splitting agreement to comply with Rule 4-1.5(e) is not an affirmative defense in an action for breach of the agreement; rather "to state a cause of action for violation of a fee splitting agreement, a plaintiff must plead facts in its petition showing that the agreement complies with Rule 4-1.5(e)." Law Offices of Gary Green, P.C. v. Morrissey, 210 S.W.3d 421, 425 (Mo. Ct. App. 2006) (citation omitted); accord Londoff v. Vuylsteke, 996 S.W.2d 553, 556 (Mo. Ct. App. 1999). Thus it is

12

Plaintiff's burden to demonstrate compliance.

A close question is presented here on whether a reasonable juror could conclude that the 140 clients in question signed the form Asbestos Client Agreement. Based upon the record now before the Court, and giving Plaintiffs the benefit of all reasonable inferences, as the Court must do in ruling on Defendants' Motion for Summary Judgment, the Court cannot say that Defendants are entitled to judgment as a matter of law as to the 140 clients in question. It is not disputed that each of these clients signed some form of written retainer agreement, and Defendants have offered no evidence of any form of agreement, other than the form agreement provided by Plaintiffs, that was used with any of these clients. Accordingly, this ground of Defendants' motion for summary judgment shall be denied.

(e) **Whether Plaintiffs Can Meet Their Burden to Prove the Existence of a Written Associate Counsel Agreement by Clear and Convincing Evidence**

Defendants argue that Plaintiffs cannot establish by clear and convincing evidence either the existence or the terms of the alleged Associate Counsel Agreement. The Court has already decided, by the Memorandum and Order dated March 27, 2008, that a jury question exists on these matters. In its Memorandum and Order of March 24, 2009 (Doc. #105), denying reconsideration of this decision, the Court specifically recognized that the clear and convincing standard applied to prove the former existence of a lost document.

"The clear and convincing standard requires evidence 'which instantly tilts the

scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved.'" Coon v. Am. Compressed Steel, Inc., 207 S.W.3d 629, 637 (Mo. Ct. App. 2006) (quoting Peters v. Gen. Motors Corp., 200 S.W.3d 1, 25 (Mo. Ct. App. 2006)). "The evidentiary burden imposed by the clear, cogent and convincing standard of proof requires 'the [fact-finder] be clearly convinced of the proposition to be proved.'" Hahn v. Tanksley, No. SD 29751, 2010 WL 2115994, at *7 (Mo. Ct. App. May 27, 2010) (quoting Celtic Corp. v. Tinnea, 254 S.W.3d 137, 141 (Mo. Ct. App. 2008)).

While this is an exacting standard which Plaintiffs may not be able to meet, the Court believes that the better course here is to present the evidence to the jury for determination, under proper instruction as to the standard of proof.

**Plaintiffs' Motion for Modification of the Court's Memorandum and Order Dated April 9, 2010**

In the Memorandum and Order at issue, the Court ruled that Andrew O'Brien/the O'Brien Law Firm did not have to produce records, pursuant to discovery requests by Plaintiffs, with respect to any claims first filed after January 1, 2000, on behalf of individuals who went through the asbestos screening in the 1980s or 1990s. Plaintiffs now ask the Court to modify that cut off date to September 1, 2000, the date that Andrew O'Brien left Defendants' employ and started his own law firm.

The January 1, 2000, cut-off date was not linked directly to when Andrew O'Brien left Defendants' employ. Rather, the question was whether Plaintiffs would

14

have a right to any fees from cases filed after January 1, 2000, on behalf of individuals who went through the asbestos screening in the late 1980s and early 1990s. Plaintiffs have offered no evidence to the contrary nor have they offered evidence suggesting that any such claims were first filed between January 2000 and September 2000. As such, Plaintiffs' motion shall be denied.

**Plaintiffs' Motion for Reconsideration of this Court's Memorandum and Order Dated March 27, 2008**

Plaintiffs also ask the Court to reconsider its holding that those claims that were subject to a five-year statute of limitations were time barred. Plaintiffs argue that new information revealed during discovery related to Andrew O'Brien/The O'Brien Law Firm establishes an accrual date within five years of when this lawsuit was commenced. Pursuant to a recent Order by the Court (Doc #215), Plaintiffs' request to add claims against Andrew O'Brien/The O'Brien Law Firm to this lawsuit was denied. The Court does not believe that any of the new evidence offered by Plaintiffs warrants reconsideration of the March 27, 2008 Memorandum and Order.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment on multiple grounds is **DENIED**. [Doc. #163]

**IT IS FURTHER ORDERED** that Plaintiffs' motion for reconsideration of this Court's Memorandum and Order dated March 27, 2008, is **DENIED**. [Doc. #180].

**IT IS FURTHER ORDERED** that Plaintiffs' motion for modification of the Court Memorandum and Order dated April 9, 2010, is **DENIED**. [Doc. #191]

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 4th day of August, 2010.