UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDWIN C. MARTIN, JR., et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:05CV1857 AGF |
| | ) |
| JAMES P. HOLLORAN, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion in Limine (Doc. # 251-1) in which Defendants seek to preclude Plaintiffs from introducing the testimony, and related documentary evidence, of four attorneys with whom Plaintiffs entered into a written Associate Counsel Agreement ("ACA") related to asbestos cases. Plaintiffs seek to show by this evidence that Plaintiffs had a "habit" or "routine practice," as those terms are used in Federal Rule of Evidence 406,[1] of insisting upon a written ACA with local counsel, such as Defendants, before proceeding with the asbestos screenings. This evidence, according to Plaintiffs, is relevant to show that Plaintiffs acted in accordance with that practice in dealing with Defendants, that is, that the parties executed a written ACA.

---

[1] Rule 406 provides as follows:

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Defendants argue that Plaintiffs' conduct at issue is not a "habit" or "routine practice" under Rule 406, that Plaintiffs' dealings with other attorneys is irrelevant to the issue of whether Defendants signed an ACA with Plaintiffs, and that any relevance would be outweighed by the confusion and that such evidence would introduce into the trial, even though it is a bench trial.

At the hearing on this and other motions in limine on September 7, 2010, counsel for Plaintiffs represented to the Court that Plaintiffs entered into approximately ten asbestos ACAs with local counsel, including Defendants, across the country in 1987, 1988, and 1989. It appears that the ACA (whether oral or written) with Defendants was one of the earlier such arrangements, if not the earliest.

The proposed evidence at issue includes the live testimony of two attorneys and the deposition testimony of two other attorneys, and the ACAs involved. The attorneys whom Plaintiffs wish to call as witnesses in person are:

> (1) Roman Silberfield, a California attorney, who will testify that he executed an ACA with Plaintiffs that was "virtually identical" to the written ACA that Plaintiffs allege existed between Plaintiffs and Defendants; and that in negotiating the ACA, Plaintiff Martin told him that he had other like arrangements with attorneys in other states, and that there was little room to negotiate the terms of the ACA, as he needed to stick to the terms he had with the other attorneys; and
>
> (2) David Thompson, a North Dakota attorney, who will testify that his firm had executed a "virtually identical" ACA.

The two attorneys whose deposition testimony Plaintiffs wish to present are:

> (1) Ed McClamma, a Florida attorney, who will testify that although he has no independent recollection of a formal agreement with Plaintiffs, Plaintiffs located an unexecuted "virtually identical" ACA between Mr.

2

> McClamma's firm and Plaintiffs and a letter by those parties to the Florida Bar stating that they had entered into a written fee-splitting agreement; and

.

> (2) Lance Pool, a Texas attorney, who will testify that his firm had entered into a one-page asbestos fee-splitting agreement.

The Court agrees with Defendants that Plaintiffs' alleged insistence on a written ACA before proceeding with asbestos screenings is not a "habit" or "routine practice" as those terms are used in Rule 406. The Advisory Committee Notes for Rule 406 explain that habit

> describes one's regular response to a repeated specific situation . . . . A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.

The Notes comment that "[e]quivalent behavior on the part of a group is designated 'routine practice of an organization' in the rule."

The Notes further explain that although there is no precise formula for determining when behavior becomes so consistent as to rise to the level of habit or practice, "adequacy of sampling and uniformity of response are key factors."

The Court questions whether the conduct that Plaintiffs wish to demonstrate here is the type of semi-automatic, situation-specific conduct required for admission under Rule 406. See Becker v. ARCO Chem. Co., 207 F.3d 176, 204 (3d Cir. 2000) (holding that an employers' alleged repetitive behavior of fabricating reasons for terminating employees is not the sort of semi-automatic, situation-specific conduct admitted under

3

Rule 406); Simplex, Inc. v. Diversified Energy Sys., Inc, 847 F.2d 1290, 1293 (7th Cir. 1988) (affirming exclusion of evidence of a corporation's conduct with respect to other contracts to establish its alleged routine practice of late deliveries and defective performance; rejecting the contention that late and inadequate performance of other contracts "approaches the level of specificity necessary to be considered semi-automatic conduct" pursuant to Rule 406).

Furthermore, Plaintiffs' proposed evidence does not establish the kind of "invariable regularity" needed to establish that certain behavior rose to the level of a habit or practice. Four instances out of ten is simply not sufficient for this purpose. Cf. Joseph v. Krull Wholesale Drug Co., 147 F. Supp. 250, 258 (E.D. Pa. 1956), aff'd, 245 F.2d 231 (3d Cir. 1957) (holding that testimony that the defendant corporation made at-will contracts with all of the seven individuals who had ever served as officers, was admissible as tending to prove the defendant's practice not to make contracts for definite periods of time with its officers).

Analyzing the evidence under Rules 402 and 403, the Court must consider whether the evidence is relevant, and if so, whether its probative value is substantially outweighed by the considerations noted in Rule 403. The Court believes that the evidence does not have strong probative value, however, this is now a bench trial, where the Rule 403 factors weigh much less in the balance. Subject to reconsideration upon hearing the testimony, the Court will allow Plaintiffs to introduce the evidence, and will accord it the weight it is due.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion in Limine (Doc. # 251-1) is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2010.